**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TIMOTHY HEEG & KRISTIN SEMON, On Behalf of Themselves and Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-12-00684 |
| ADAMS HARRIS, INC., | § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

The plaintiffs, Timothy Heeg and Kristin Semon, have moved for conditional class certification and for issuance of notice to potential opt-in class members. (Docket Entry No. 20). The plaintiffs' proposed class includes "all hourly workers that Adams Harris paid at 'straight time' rates for hours worked in excess of forty in a workweek in the past 3 years." (*Id*., Ex. 6). Adams Harris's arguments in opposition include that the plaintiffs failed to show that they are similarly situated to the putative class members and that the computer-professional exemption applies. (Docket Entry No. 22, at 3).

Based on the pleadings; the motion, response, and reply; the record; the arguments of counsel; and the relevant law, this court grants in part the plaintiffs' motion for conditional class certification. The class is defined as follows:

> Project Professionals classified as exempt computer professionals and independent contractors who worked at Adams Harris from June 30, 2009 to June 30, 2012; were paid hourly; and worked for Adams Harris clients on accounting matters, corporate-cost analysis, and financial audits related to vendor invoices and payment.

The reasons for this ruling are explained below.

## I.     Background

Adams Harris provides professional-services staffing in the areas of audits, finance, tax, and technology.  In this suit, the plaintiffs alleged they and others worked for Adams Harris in different client offices as "Project Professionals."

Heeg, Semon, and a third individual, Kristine Tram Woodward, filed declarations in support of the motion for conditional certification.  Heeg stated that he did auditing and cost-control work as a cost accountant for British Petroleum North America, working on a "finance team responsible for determining what had been spent and what was being spent on a daily basis," and on a "vessel procurement team" where he helped to create "a master vessel list used to track the boats BP chartered," (Docket Entry No. 20, Ex. 2, ¶ 2).  Semon stated that she was a "finance chief" for BP North America doing primarily "forensic auditing to determine what was being spent by BP on a daily basis" and also reviewing invoices to verify proper payments to vendors, (*Id*., Ex. 3, ¶ 2).  Woodard stated that she was a "cost engineer" for BP North America, working on cost estimating and forecasting cost controls, reviewing contractor payments, and developing "report tracking tools to better manage reporting of expenditures and contractor payments."  (*Id*., Ex. 4, ¶ 2).  All three asserted that they were paid hourly.  They allege that they worked more than 40 hours some weeks but were paid straight time for all hours.

The two plaintiffs allege that they were Adams Harris Project Professionals and paid under the same policy of straight time for overtime hours.  They seek conditional certification of a collective action consisting of "[a]ll hourly workers that Adams Harris paid at 'straight time' rates

for hours worked in excess of forty in a workweek in the past 3 years." (Docket Entry No. 20, at 4).

Adams Harris raises a number of objections to collective-action treatment. The objections include that: the plaintiffs have failed to show that there are other putative class members who are interested in joining their proposed class; the Project Professionals were not similarly situated because their job duties, clients, office locations, and employment terms differed; the hourly workers were computer professionals who were exempt from the FLSA's overtime requirements; and other hourly workers, including Woodard, were exempt as independent contractors. (Docket Entry No. 21, at 10–13, 14–16). Tracy Tyler, Managing Director for Adams Harris's Houston office from September 2006 to June 2012, gave an affidavit. She stated that Adams Harris professional employees were all called "Project Professionals" but they worked on a variety of different tasks. These employees also had different work experience, different degrees (most had B.A.s but many also had advanced degrees, including M.B.A.s), and different certifications (such as Certified Public Accountant, Certified Information Systems Auditor, and Certified Internal Auditor). (Docket Entry 21, Ex. 1, ¶ 2–3).

According to Tyler, the Project Professionals were either "Hourly" or "Salaried," depending on their project and on individual negotiated work arrangements. (*Id*., ¶ 5). The Project Professionals were divided into groups. One group was made up of "computer professionals," some paid hourly and the rest salaried. (*Id*., ¶ 6). Tyler stated that "[o]nly hourly computer professionals were paid at straight time rates for hours worked over forty in a workweek." (*Id*., ¶ 7). There were 18 hourly Project Professionals who worked as computer professionals from March 5, 2009 through

June 2012.  According to Tyler, they were "all paid at least $27.63 per hour," (*Id*., ¶ 8).  After June 30, 2012, Adams Harris did not employ Project Professionals or independent contractors.  (*Id*., ¶ 22.)

According to Tyler, each Project Professional, including those working as computer professionals and paid on an hourly basis, did different work and had different compensation arrangements.  (*Id*., ¶¶ 4, 6, 9–11).  Heeg, for example, was paid on a salaried basis from October 2008 through March 2009.  He was rehired on an hourly basis with no overtime rates from June 2010 to October 2011.  After that date, he was paid a reduced hourly rate but with overtime rates for hours worked in excess of 40.  Heeg's work focused on vendor payments.  (*Id*., ¶¶ 9–11).  Semon worked on a salaried basis from October 2008 to March 2009, focusing on Sarbanes-Oxley audit issues.  She was then rehired on an hourly basis with no overtime pay, working as a cost analyst and on a separate project relating to antibribery and corruption audits involving domestic and internal vendors.  She later worked as a SOX expert for another Adams Harris client.  (*Id*., ¶¶ 12–15).  Semon and Heeg were the only hourly computer professionals working at BP North America.  The other 16 worked in other cities in Georgia and Texas for one of "at least ten clients" that were themselves diverse.  (*Id*., ¶ 16).  Tyler listed examples of computer professionals' work responsibilities.  These descriptions included providing computer systems security audits; building data centers; providing data extraction and analysis for operational or forensic purposes; ensuring regulatory compliance; and serving as a client's outsourced IT department.  (*Id*., ¶ 17).

The threshold issue is whether the two plaintiffs have shown that there is a class of similarly situated individuals meeting the standard for conditional collective-action certification.

**II.      The Applicable Legal Standard**

4

Under § 207(a) of the FLSA, covered employers are required to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. Section 216(b) provides a right of action for employees against employers who violate § 207. Similarly situated employees may "opt-in" to a lawsuit under § 207(a). Courts recognize two methods for determining whether to certify a collective action on a conditional basis or authorize notice to similarly situated employees: the spurious class action *Shushan* approach, or the two-step *Lusardi* approach. *Aguirre v. SBC Communications, Inc*., 2006 WL 964554, at *4 (S.D. Tex. April 11, 2006) (citing *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D.Colo. 1990); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987)). The Fifth Circuit has not determined which method is more appropriate. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995). Most courts use the *Lusardi* approach. *Aguirre,* 2006 WL 964554, at *4; *see also Johnson v. Big Lots Stores, Inc.*, 2007 WL 5200224, at *3 (E.D. La. Aug. 21, 2007) ("Since *Mooney* district courts in the Fifth Circuit have uniformly used [the *Lusardi* approach] to determine whether a collective [action] should be certified under the FLSA.").

The first step of the *Lusardi* analysis requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) those individuals want to opt in to the lawsuit. *Maynor v. Dow Chem. Co.*, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008). "'A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.'" *Aguirre*, 2006 WL 964554, at *5 (quoting *England v. New Century Fin. Corp.,* 370 F. Supp. 2d 504, 507 (M.D. La. 2005)). A court also "has

5

the power to modify an FLSA collective action definition on its own" if the proposed class definition does not encompass only similarly situated employees." *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149, at *3 (S.D. Tex. Dec.11, 2008) (citing *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931–32 (5th Cir. 2005)). Because the court's decision at this first step is usually based only on the pleadings and affidavits, the standard is lenient and typically results in conditional certification. *Id.* Discovery usually has not been conducted at this stage, and courts do not review the underlying merits of the action in determining whether to grant conditional certification. *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010). Some factual support for the complaint allegations of class-wide policy or practice must be shown to authorize notice. *Maynor*, 2008 WL 2220394, at *6; *see also Barron v. Henry County Sch. Sys.*, 242 F .Supp.2d 1096, 1103 (M.D. Ala. 2003) ("[S]ome identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency."). Courts have favored collective actions when a plaintiff can establish that common issues of law and fact exist and arise from the same alleged activity, because a collective action proceeding may "reduce litigation costs for the individual plaintiffs and create judicial efficiency." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 823 (N.D. Tex. 2007) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Once a court conditionally certifies a class, the case proceeds as a collective action during discovery. *Aguirre*, 2006 WL 964554, at *5 (citing *Mooney*, 54 F.3d at 1214). At the second stage of the analysis, the defendant may move to "decertify" the conditionally certified class. *Id.* (citing *Mooney*, 54 F.3d at 1214). The court then must make a factual determination as to whether the employees are similarly situated; if it so finds, the collective action may proceed. *Id.* Alternatively, if the court finds that the employees are not similarly situated, the opt-in plaintiffs are dismissed

without prejudice, and the original plaintiffs proceed with their individual claims. *Id.* (citing *Mooney* 54 F.3d at 1214).

### III. Analysis

#### A. Other Aggrieved, Similarly Situated Individuals

##### 1. Whether There Are Other Aggrieved Individuals Who Want to Opt In to the Lawsuit

Adams Harris argues that the plaintiffs have not provided evidence that other similarly situated, aggrieved individuals exist who would want to opt in to a certified collective action. Under this first element, the plaintiffs need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan. *See Morales v. Thang Hung Corp.*, 2009 WL 2524601, at *3 (S.D. Tex. Aug. 14, 2009); *Prater v. Commerce Equities Mgmt. Co., Inc.*, 2007 WL 4146714, at *5 (S.D. Tex. Nov. 19, 2007). The plaintiffs' burden at the conditional-certification stage is low. *Barajas v. Acosta*, 2012 WL 1952261, at *3 (S.D. Tex. May 30, 2012). The plaintiffs have submitted the affidavit of at least one other hourly Adams Harris worker who alleged that she was not paid overtime and stated that she is interested in joining the class. (Docket Entry No. 20, Ex. 4). Adams Harris admits that there are at least 18 employees who might be eligible under the plaintiffs' proposed class definition. The first element is met.

##### 2. Whether Other Individuals Are Similarly Situated

Many courts have stated that putative class members must show that they were affected by a common policy, plan, pattern, or practice to satisfy the "similarly situated" inquiry. *See, e.g.*, *O'Brien v. Ed Donnelly Enters., Inc.*, 2006 WL 3483956, at *3 (S.D. Ohio Nov. 30, 2006) (citations omitted) ("Plaintiffs must demonstrate that the Defendants had a common policy or plan in violation

of the FLSA that negatively impacted the original and opt-in Plaintiffs."); *England*, 370 F. Supp. 2d at 507 (a court may refuse to allow plaintiffs to proceed collectively if the action arises from circumstances purely personal to the plaintiffs and not from any generally applicable rule, policy, or practice); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 95–97 (S.D.N.Y. 2003) (a plaintiff must allege a common policy or plan and establish a sufficient factual nexus between his situation and the situation of the proposed classed members); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1139 n. 6 (D. Nev. 1999) ("In order to be similarly situated, the action must not be distinct and specific to individual plaintiffs; rather, there must be some general policy or practice."). A plaintiff must demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists. *Lima v. Int'l Catastrophe Solutions, Inc*., 493 F. Supp. 2d 793, 798 (E.D. La. 2007). Complete uniformity is not necessary. "[T]he 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)[, so] a unified policy, plan, or scheme of discrimination may not be required to satisfy . . . § 216(b)." *Grayson*, 79 F.3d at 1095; *see also Falcon v. Starbucks Corp*., 580 F. Supp. 2d 528, 534–35 (S.D. Tex. 2008) (collecting cases).

The issue is whether, given the evidence of the number and variety of clients for whom the potential class members worked, and given the individual negotiation of the pay arrangements, the similarly situated requirement is met. Potential class members are considered similarly situated to the named plaintiff if they are "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Ryan*, 497 F. Supp. 2d at 825 (citing *Dybach v. State of Florida Dept. of Corrections,* 942 F.2d 1562, 1567–68 (11th Cir. 1991)). The positions need not be identical, but they must be similar. If the job duties among putative class members vary

significantly, then class certification should be denied. *See, e.g.*, *Dreyer*, 2008 WL 5204149, at *3; *Aguirre*, 2007 WL 772756, at *9.

The plaintiffs submitted declarations describing work that is primarily accounting, cost-control and audit work, focused on vendor invoices and payments. (Docket Entry No. 20, Exs. 2, 3). The Adams Harris Houston office Managing Director also submitted an affidavit describing work done by other Project Professionals who were classified as exempt computer professionals, both hourly and salaried. (Docket Entry No. 21, Ex. 1). The work appears to break down into two categories: (1) working on building or administering IT infrastructures, programs, or even entire IT departments, including working on the security of clients' computer systems; and (2) working on accounting, cost-control, and financial audits, primarily of vendor invoices and payments. Only the second category is similarly situated to the plaintiffs. The collective action the plaintiffs seek to have certified is overbroad in that it includes both those working primarily on financial analysis and those working primarily on IT systems infrastructure and administration.

The plaintiffs argue that Adams Harris's decision to classify all or most of its proposed class as computer professionals who are exempt from the FLSA's overtime requirements satisfies the "similarly situated" requirement. But it is not enough to simply point out that the defendants assert a common defense against the proposed class. The plaintiffs must demonstrate that the "aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted." *Maynor*, 2008 WL 2220394, at *6. Given the job descriptions of Adams Harris's hourly Project Professionals, including in the class those workers who did not have responsibility for accounting matters, corporate-cost analysis, and financial audits related to vendor invoices would impede rather than promote judicial efficiency.

Adams Harris opposes conditional certification of even this limited class on the grounds that its Project Professionals worked for different companies in a number of different locations across the United States and that the plaintiffs were the only Project Professionals who worked at BP. "Geographic commonality is not necessary to meet the 'similarly situated' requirement for a FLSA collective action; instead the focus is on whether the employees were impacted by a common policy." *Vargas v. Richardson Trident Co.*, 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (collecting cases). If there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate. *Rueda*, 2011 WL 2566072, at *4; *see also id.* (certifying a class across multiple locations based on the affidavit of one employee that the company's policies extended to other locations); *Blake v. Colonia Savings, F.A.*, 2004 WL 1925535, at *2 (S.D. Tex. Aug. 16, 2004) (approving notice to loan officers in the defendant's Dallas office and those in remote locations based on evidence that the company's policies extended to all locations). Adams Harris suggests that it was responsible for classifying employees as computer professionals exempt from FLSA's overtime requirements and did so according to centrally maintained corporate records. (Docket Entry No. 21, Ex. 1, ¶ 4). Although Adams Harris alleges that "[t]here was no policy or practice mandating that computer professionals be paid hourly or salaried," (*Id.* ¶ 7), it does not state whether it relied on a central policy to decide whether or which Project Professionals should be classified as exempt computer professionals.

The evidence that other Adams Harris Project Professionals with similar job responsibilities to the plaintiffs were subject to the same pay policy, regardless of geography, is sufficient to meet the low bar required for conditional classification. This does not prevent Adams Harris from

moving to decertify the class if the plaintiffs are unable to substantiate their claims that the Adams Harris employees in the conditional class were classified according to a common policy.

### 3. Whether Workers Classified as Independent Contractors May Be Included in the Class

Adams Harris asserts that the proposal to include workers classified as independent contractors defeats certification because determining who is an independent contractor requires an inherently individualized analysis. (Docket Entry No. 21, at 14–16).[1]

Courts are split as to whether the economic realities test should be used to determine whether to conditionally certify an FLSA action concerning an allegedly wrongful independent contractor designation. To determine whether a worker is an employee or an independent contractor, "courts in this Circuit 'generally use as a guide five, non-exclusive factors: (a) the permanency of the relationship; (b) the degree of control exercised by the alleged employer; (c) the skill and initiative required to perform the job; (d) the extent of the relative investments of the worker and the alleged employer; and (e) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer.'" *Andel v. Patterson–UTI Drilling Co., LLC*, 2012 WL 531167, at *2 (S.D. Tex. Feb. 15, 2012) (quoting *Tibault v. Bellsouth Telecomm., Inc.*, 612 F.3d 843, 846 (5th Cir. 2010)). Courts in this district, however, have typically declined to apply the economic realities factors or other individualized analyses at the conditional certification stage.[2]

---

[1] Adams Harris also argues that the plaintiffs did not ask to include workers classified as independent contractors as members of the conditional class until they moved for conditional certification. (Docket Entry No. 21, at 15). The class definition that the plaintiffs propose in their complaint included "[a]ll hourly workers." (Docket Entry No. 1, ¶ 20). That definition encompasses those employees the plaintiffs allege were misclassified as independent contractors.

[2] *In re Wells Fargo Wage & Hour Emp. Prac. Litig. (No. III)*, 2012 WL 3308880, at *28 (S.D. Tex. Aug. 10, 2012) (noting that courts within the "Southern District of Texas . . . have

Even if this court were to apply the economic factors test, the plaintiffs have presented some initial evidence that the independent contractors have satisfied the five factors in terms of: their relationship to Adams Harris, the skill required to perform their positions, the extent of their investments and of the defendant's, and the degree to which their opportunity for profit and loss is determined by the alleged employer. (Docket Entry No. 20., Ex. 4).

The plaintiffs have also presented sufficient evidence through Woodward's affidavit that at least some of the Adams Harris workers classified as independent contractors performed work that was similar to the plaintiffs' work. Woodward states that she focused on financial and accounting duties as a "cost engineer"; she was paid hourly; and she was not paid overtime for hours worked over 40 hours per week. (Docket Entry No. 20, Ex. 4, ¶¶ 2-4). The affidavit evidence is enough at this stage to show that at least some independent contractors are sufficiently similarly situated to be included in the conditional class.

**B.     Willfulness**

---

determined that exemptions are merit-based and not relevant at the notice stage"); *see also Scovil v. FedEx Ground Package System, Inc.*, 811 F. Supp. 2d 516, 518–19 (D. Me. 2011) ("Many courts considering conditional certification under the FLSA have not applied the economic realities factors in determining whether proposed class members are similarly situated." (citing cases)); *Putnam v. Galaxy 1 Marketing, Inc.*, 276 F.R.D. 264, 274 (S.D. Iowa 2011) ("Defendants also urge the Court to look to the 'economic realities' of the working relationship . . . . Making a determination, at this time, . . . pursuant to the 'economic realities' test, would . . . improperly delve into the merits of Plaintiffs' claim."); *Meseck v. TAK Communications, Inc.*, 2011 WL 1190579, at *6 (D. Minn. March 28, 2011) ("Courts in this district and elsewhere consistently hold that such potential defenses and individualized inquiries should not prevent conditional certification at the notice stage and are more appropriately addressed through a decertification motion."); *Lemus v. Burnham Painting and Drywall Corp.*, 2007 WL 1875539, at *5 (D. Nev. June 25, 2007) ("The fact intensive inquiries concerning whether the plaintiffs are independent contractors or employees for the purposes of the FLSA, and detailed analysis of whether the plaintiffs are sufficiently similarly situated to maintain the class are more appropriately decided after notice has been given, the deadline to opt in has passed, and discovery has closed.").

Adams Harris argues that the plaintiffs have not presented evidence of a willful FLSA violation and that this precludes the court from approving the plaintiffs' proposed three-year notice period. (Docket Entry No. 21, at 16). If a violation is not willful, the limitations period for FLSA claims is two years, while if the violation is willful, the limitations period is three years. 29 U.S.C. § 255(a). An FLSA violation is willful if the employer "'knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.'" *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). The plaintiff bears the burden of showing a willful FLSA violation. *Id.*; *see also Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001) ("Generally, a plaintiff suing under the FLSA carries the burden of proving all elements of his or her claim."). The plaintiffs' three-year notice period is appropriate. According to this district's precedent, "where a plaintiff alleges a willful FLSA violation, notice is proper for potential class members employed by the defendant within the full three-year period." *Walker v. Honghua America, LLC*, 2012 WL 1601288, at *7 (S.D. Tex. May 07, 2012) (citing *Albanil v. Coast 2 Coast, Inc.*, 2008 WL 4937565, at *8 (S.D. Tex. Nov. 17, 2008)). "FLSA plaintiffs are not required to prove willfulness prior to discovery." *Id.*

**C.     Notice**

The plaintiffs ask for an order that Adams Harris give them a list of the names, addresses, and social security numbers of the class members within 14 days. The plaintiffs also ask the court for permission to use this information to mail notices giving 60 days to opt in to the collective action. (Docket Entry No. 20, Ex. 6). Adams Harris objects to providing the plaintiffs with information about potential class members beyond their names and telephone numbers and asks that it be permitted to issue the notices to its former employees. (Docket Entry No. 21, at 21–22).

The court grants the plaintiffs' request to issue notices but finds that the request for information beyond the names and telephone numbers of potential class members is overbroad and unsupported by the current record. *See, e.g.*, *Rosario v. Valentine Avenue Discount Store, Co.*, 858 F. Supp. 2d 508, 521–22 (E.D.N.Y. 2011); *Guan Ming Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165, 179 (S.D.N.Y. 2011). If notices are returned to plaintiffs' counsel as undeliverable, the plaintiffs may ask for additional information for these individuals. *See, e.g.*, *Rosario*, 858 at 522; *Rincon v. B.P. Security & Investigations, Inc.*, 2006 WL 3759872, at *2 (S.D. Tex. Dec. 19, 2006).

## IV. Conclusion

The plaintiffs' motion for conditional collective action certification is granted in part. The court limits the class to:

> Project Professionals classified as exempt computer professionals and independent contractors who worked at Adams Harris from June 30, 2009 to June 30, 2012; were paid hourly; and worked for Adams Harris clients on accounting matters, corporate-cost analysis, and financial audits related to vendor invoices and payment.

The court also orders Adams Harris to produce the names and addresses of potential members by **November 15, 2012**.

SIGNED on October 31, 2012, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge